1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TAMMY SUE COOPRIDER,                    No. 2:15-cv-0385 DB

12              Plaintiff,

13        v.                                 ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15

16              Defendant.

17

18        This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment.[1]  For the reasons explained below, plaintiff's motion is

20   denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social

21   Security ("Commissioner") is affirmed.

22                         PROCEDURAL BACKGROUND

23        On June 5, 2011, plaintiff filed applications for Disability Insurance Benefits ("DIB")

24   under Title II of the Social Security Act ("the Act") and for Supplemental Security Income

25   ("SSI") under Title XVI of the Act alleging disability beginning on February 28, 2004.

26   (Transcript ("Tr.") at 19, 107.)  Plaintiff's applications were denied initially, (id. at 141-48), and

27

28   [1]  Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant
     to 28 U.S.C. § 636(c).  (See Dkt. Nos. 10 & 11.)

                                            1

1    upon reconsideration.  (Id. at 151-60.)

2          Thereafter, plaintiff requested a hearing which was held before an Administrative Law

3    Judge ("ALJ") on May 21, 2013.  (Id. at 52.)  Plaintiff was represented by an attorney and

4    testified at the administrative hearing.  (Id. at 52-78.)  In a decision issued on July 22, 2013, the

5    ALJ found that plaintiff was not disabled.  (Id. at 35.)  The ALJ entered the following findings:

6
7              1.  The claimant meets the insured status requirements of the Social
               Security Act through June 30, 2009.

8              2.  The claimant has not engaged in substantial gainful activity
               since June 11, 2009, the amended alleged onset date (20 CFR
9              404.1571 et seq., and 416.971 et seq.).[2]

10             3.  The claimant has the following severe impairments: moderate
               degenerative disc disease with spinal stenosis resulting in
11             cervicalgia; arthritis of the right shoulder status post right rotator
               cuff repair; mild obstructive sleep apnea; diabetes mellitus under
12             good control; hypertension under good control; anemia under good
               control; carpal tunnel syndrome of the right hand; history of
13             obesity; hip pain with diagnosis of bursitis; and anxiety/post-
               traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and
14             416.920(c)).

15             4.  The claimant does not have an impairment or combination of
               impairments that meets or medically equals the severity of one of
16             the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
               (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
17             and 416.926).

18             5.  After careful consideration of the entire record, the undersigned
               finds that the claimant has the residual functional capacity to
19             perform a range of light work, as defined in 20 CFR 404.1567(b)
               and 416.967(b) and SSR 83-10, specifically as follows: the
20             claimant can lift and/or carry 20 pounds occasionally and 10
               pounds frequently; she can stand and/or walk for 3 hours out of an
21             8-hour workday; she can sit for 6 hours out of an 8-hour workday
               with regular breaks; she can frequently reach, handle, and finger
22             with bilateral upper extremities, except she is limited to occasional
               overhead reaching with the right upper extremity; she can change
23             postural positions every 20 minutes; she can occasionally perform
               postural activities, except she cannot climb or crawl; she cannot
24             work at heights, at high temperatures, or around extreme vibration;
               she is limited to unskilled work; and she is unable to work in close
25             proximity to the public.

26             6.  The claimant is unable to perform any past relevant work (20
               CFR 404.1565 and 416.965).

27   _____

28   [2]  On October 31, 2012, plaintiff amended her alleged disability onset date to June 11, 2009.  (Tr.
     at 19.)

7.  The claimant was born on April 2, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from June 11, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 21-35.)

On December 15, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's July 22, 2013 decision.  (Id. at 1-3.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 18, 2015.

LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari,  298 F.3d 1072, 1075 (9th Cir. 2002).

3

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

APPLICATION

In her pending motion plaintiff asserts the following two principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ improperly rejected plaintiff's own subjective testimony.[3]

## I.   **Medical Opinion Evidence**

Plaintiff challenges the ALJ's treatment of the medical opinions offered by treating physician Dr. Hamid Kourdoni and examining physician Dr. John Kiefer.  (Pl.'s MSJ (Dkt. No.

---

[3] Plaintiff's motion purportedly asserts three claims of error.  However, two of those claims pertain to the ALJ's treatment of the medical opinion evidence.  Accordingly, the court will address the ALJ's treatment of the medical opinion evidence as a single claim addressing both of plaintiff's arguments.

22) at 23-29.[4])  The weight to be given to medical opinions in Social Security disability cases

depends in part on whether the opinions are proffered by treating, examining, or nonexamining

health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

"As a general rule, more weight should be given to the opinion of a treating source than to the

opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because

a treating doctor is employed to cure and has a greater opportunity to know and observe the

patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan,

894 F.2d 1059, 1063 (9th Cir. 1990).

        The uncontradicted opinion of a treating or examining physician may be rejected only for

clear and convincing reasons, while the opinion of a treating or examining physician that is

controverted by another doctor may be rejected only for specific and legitimate reasons supported

by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a

treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not

accept the opinion of any physician, including a treating physician, if that opinion is brief,

conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661,

671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.

2009)).

        **A.  Dr. Hamid Kourdoni**

        Here, on July 13, 2012, Dr. Kourdoni completed an "Upper Extremity Physical Residual

Functional Capacity Evaluation."  (Tr. at 1623.)  The ALJ afforded Dr. Kourdoni's opinion

"significant weight, but not great weight" because the opinion was "brief, conclusory, and  . . .

inadequately supported by clinical findings."  (Id. at 33.)  Specifically, the ALJ noted that Dr.

Kourdoni's opinion that plaintiff was "limited to occasional reaching and handling with the right

upper extremity" was not supported by the record.  (Id.)

---

[4] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF
system and not to page numbers assigned by the parties.

1  In support of this conclusion, the ALJ noted that, although plaintiff had right rotator cuff

2  repair in February of 2011, "treatment records" thereafter reveal that plaintiff's "right shoulder

3  pain improved with an initial course of physical therapy" and with "minimal complaints of right

4  should pain afterwards." (Id.) A conflict between treatment notes and a physician's opinion

5  constitutes adequate reason to discredit the physician's opinion. See Ghanim v. Colvin, 763 F.3d

6  1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's

7  opinions may constitute an adequate reason to discredit the opinions of a treating physician or

8  another treating provider."); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692-93

9  (9th Cir. 2009) (conflict with treatment notes is a specific and legitimate reason to reject treating

10  physician's opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the

11  ALJ properly found that Dr. Magsarili's extensive conclusions regarding Connett's limitations are

12  not supported by his own treatment notes.").

13  Moreover, the ALJ's finding is supported by substantial evidence in the record. In this

14  regard, plaintiff commenced physical therapy shortly after her shoulder surgery. Notes from

15  those treatment sessions reveal that plaintiff progressed to having "[g]ood ROM and improving

16  strength and function," with "excellent relief in motion/strength," requiring "Tylenol only for

17  pain . . . 'once in a while!'" (Tr. at 441, 446.) Plaintiff was discharged from physical therapy on

18  June 2, 2011, with the notation "[t]reatment objectives achieved." (Id. at 433.) On June 17,

19  2011, Dr. Kourdoni noted that plaintiff's "[r]ight should pain, is in good control." (Id. at 430.)

20  An October 19, 2012, examination found that plaintiff had "full range of motion of shoulder and

21  rotator cuff is intact." (Id. at 1710.) In this regard, the court finds that the ALJ provided clear

22  and convincing reasons for discrediting Dr. Kourdoni's opinion.[5]

23  **B.  Dr. John Kiefer**

24  With respect to Dr. Kiefer, on September 20, 2011, Dr. Kiefer completed "a

25  comprehensive psychiatric evaluation," of plaintiff. (Tr. at 1119.) Therein, Dr. Kiefer opined

26

27

28

---

[5] Plaintiff also argues that the ALJ should have considered whether plaintiff was entitled to a closed period of disability. (Pl.'s MSJ (Dkt. No. 22) at 25.) Plaintiff, however, has failed to point to any persuasive evidence establishing that she was unable to engage in any substantial gainful activity because of her conditions for a continuous period of not less than twelve months.

1   that several of plaintiff's functional abilities were "poor." (Id. at 1123.)  The ALJ, however,

2   afforded "little weight" to Dr. Kiefer's opinion.  (Id. at 27.)  In this regard, the ALJ found that Dr.

3   Kiefer's opinion contained "inconsistencies," was not supported by "the relatively limited

4   positive findings from his own examination," and seemed to "accept uncritically as true most, if

5   not all, of what the claimant reported."  (Id. at 27-28.)

6        An ALJ may reject a physician's opinion that is premised largely on a claimant's

7   subjective complaints that have been properly discounted.  See Tommasetti v. Astrue, 533 F.3d

8   1035, 1041 (9th Cir. 2008); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Morgan

9   v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999).  As noted below, here

10  the ALJ properly discounted plaintiff's subjective complaints.

11       Moreover, the ALJ's finding is supported by substantial evidence in the record.  In this

12  regard, Dr. Kiefer's examination found that plaintiff described her mood as "depressed," that she

13  had a restricted affect, and a deficient fund of knowledge/information.  (Tr. at 1121.)  However,

14  Dr. Kiefer also found plaintiff to be "casually dressed and well groomed," with a "neutral

15  attitude," normal speech, clear articulation, normal concentration, and average intellectual

16  functioning.  (Id. at 1121-22.)  Plaintiff was able to "repeat 3/3 words immediately and 2/3 words

17  after five minutes," was able to "repeat six digits forward and four digits in reverse."  (Id. at

18  1122.)  Plaintiff was also "able to demonstrate some abstract thinking," "differentiate

19  appropriately," and "follow a simple three-step command and list the days of the week

20  backwards."  (Id.)

21       Nonetheless, despite these relatively benign findings, Dr. Kiefer opined that plaintiff's

22  "ability to interact with coworkers," to "sustain an ordinary routine without special supervision,"

23  to "complete a normal workday/workweek without interruptions," and to "deal with various

24  changes in the work setting," were "poor."  (Id. at 1123.)  Dr. Kiefer also opined that the

25  likelihood of plaintiff emotionally deteriorating in the work environment was "high."  (Id.)  Thus,

26  the ALJ correctly found that Dr. Kiefer's opinion contained "inconsistencies" and appeared to be

27  based largely on plaintiff's subjective complaints.  Accordingly, the court finds that the ALJ gave

28  clear and convincing reasons for discrediting Dr. Kiefer's opinion.

1    For the reasons stated above, the court finds that plaintiff is not entitled to relief with

2    respect to this claim.

3    **II.        Plaintiff's Subjective Testimony**

4    Plaintiff argues that the ALJ's treatment of plaintiff's testimony constituted error.  (Pl.'s

5    MSJ (Dkt. No. 22) at 29-33.)  The Ninth Circuit has summarized the ALJ's task with respect to

6    assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

16   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

17   omitted).  "The clear and convincing standard is the most demanding required in Social Security

18   cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At

19   the same time, the ALJ is not required to believe every allegation of disabling pain, or else

20   disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112

21   (9th Cir. 2012).

22   "The ALJ must specifically identify what testimony is credible and what testimony

23   undermines the claimant's complaints."  Valentine, 574 F.3d at 693 (quoting Morgan v. Comm'r

24   of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an

25   ALJ may consider, among other things, the "[claimant's] reputation for truthfulness,

26   inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct,

27   [claimant's] daily activities, [her] work record, and testimony from physicians and third parties

28   concerning the nature, severity, and effect of the symptoms of which [claimant] complains."

1  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting

2  Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is

3  supported by substantial evidence in the record, the court "may not engage in second-guessing."

4  Id.

5        Here, the ALJ found that plaintiff's medically determinable impairments could reasonably

6  be expected to cause some of her alleged symptoms, but that plaintiff's statements concerning the

7  intensity, persistence and limiting effects of those symptoms were not credible to the extent they

8  were inconsistent with the ALJ's residual functional capacity assessment.  (Tr. at 25.)  In this

9  regard, the ALJ noted that treatment records revealed "multiple notations indicating the claimant

10  failed to follow prescribed treatment recommendations . . . ."  (Id.)  "[I]n assessing a claimant's

11  credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek

12  treatment or to follow a prescribed course of treatment.'"  Molina, 674 F.3d at 1113 (quoting

13  Tommasetti, 533 F.3d at 1039)).

14        Moreover, the ALJ's finding is supported by substantial evidence in the record.  In this

15  regard, multiple treatment notes reveal instances in which plaintiff was prescribed medication but

16  had "not started it yet," (Tr. at 428), "never tried that so far," (id. at 527), "did not take," (id. at

17  546), "was started on . . . but did not take any medication," (id. at 664), and "was started on . . .

18  but she has not taken the medication so far."  (Id. at 798.)

19        The ALJ also discredited plaintiff's testimony due to an inconsistency between her

20  testimony at the administrative hearing and the evidence of record.  (Id. at 25.)  In this regard,

21  plaintiff testified at the May 21, 2013 administrative hearing that she was last employed in 2004.

22  (Id. at 56-57.)  Plaintiff's treatment records, however, reveal that plaintiff worked for at least "a

23  month-and-a-half," around December of 2007.  (Id. at 867.)  "[T]he ALJ may consider

24  inconsistencies . . . in the claimant's testimony . . . ."  Molina, 674 F.3d at 1112.

25        Accordingly, the court finds that plaintiff is also not entitled to relief with respect to her

26  claim that the ALJ erred by rejecting plaintiff's testimony concerning the severity of her

27  impairments.

28  /////

1

**CONCLUSION**

2       For all the reasons stated above, the court finds that plaintiff is not entitled to summary

3 judgment in her favor with respect to any of her arguments.

4       Therefore, IT IS HEREBY ORDERED that:

5       1.  Plaintiff's motion for summary judgment (Dkt. No. 22) is denied;

6       2.  Defendant's cross-motion for summary judgment (Dkt. No. 27) is granted; and

7       3.  The decision of the Commissioner of Social Security is affirmed.

8

9 Dated:  January 17, 2017

10

11

    DEBORAH BARNES

12     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

1  DLB:6
   DLB1\orders.soc sec\cooprider0385.ord.docx
2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28